IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AARON RAISER,<br><br>　　　　　　Plaintiff,<br><br><br>　　vs.<br><br><br>BRIGHAM YOUNG UNIVERSITY,<br>　　　　　Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:02-CV-975 TC |

On March 21, 2007, the court issued an Order to Show Cause to pro se plaintiff Aaron Raiser requiring him to demonstrate good cause why the court should not dismiss his complaint for failure to prosecute or comply with the rules and orders of the court.  The court also took Defendant Brigham Young University's (BYU) Motion for Sanctions against Mr. Raiser under advisement.  This order addresses both of those matters.

First, in response to the Order to Show Cause, Mr. Raiser filed a timely response. Dismissal with prejudice under Rules 37 and 41(b) is a drastic remedy, and the court is reluctant to grant such a remedy absent a showing of sufficiently egregious behavior.  Having reviewed the history of the case and the relevant documents, the court cannot say that Mr. Raiser's conduct as a pro se litigant rises to the level necessary to implement such a remedy.  Accordingly, for the reasons set forth below, the court declines to dismiss Mr. Raiser's Second Amended Complaint with prejudice at this time.

But Mr. Raiser is on thin ice.  In lieu of dismissing Mr. Raiser's case, the court imposes

certain restrictions and requirements on Mr. Raiser that are detailed below.  If Mr. Raiser

continues his questionable behavior and does not follow court rules and orders (including this

one), the court will dismiss his case with prejudice.

Second, having taken BYU's Motion for Sanctions under advisement, the court now

DENIES that motion for the reasons set forth below.

## BACKGROUND

On August 29, 2002, Aaron Raiser filed a complaint against BYU alleging, among other

things, that campus police violated his civil rights.[1]  Up until August 2005, the court was busy

with parties' motions to remove and consolidate state cases, to remand, to dismiss, to amend the

complaint, to extend time to answer the complaint, to conduct discovery before a scheduling

conference had been held,[2] and to reconsider motions that had been denied.[3]  Also, Mr. Raiser

filed an interlocutory appeal of the court's ruling denying his use of a pseudonym (the Tenth

Circuit affirmed that ruling on April 1, 2005).  On June 23, 2005, Mr. Raiser filed his "Motion

for FRCP Rule 16 Conference."  On August 9, 2005, he filed his Second Amended Complaint,

and BYU answered on August 22, 2005.

After August 22, 2005, nothing happened in the case until the court issued an Order to

Show Cause on May 18, 2006.  At that point, Mr. Raiser's Motion for FRCP Rule 16 Conference

---

[1]That complaint was amended on August 9, 2005.  (See Second Am. Compl. (Dkt # 98).)

[2]Early in the case, Mr. Raiser filed several motions for discovery.  The court denied all of the motions on the ground that they were filed before a scheduling conference had taken place in accordance with Rule 26(f) of the Federal Rules of Civil Procedure.  (See Jan. 2, 2003 Order (Dkt # 42).)

[3]All of the motions to reconsider were filed by Mr. Raiser after the court denied his various motions.

was still pending and no response had been filed by BYU.  Mr. Raiser responded to the Order to Show Cause, but not in a timely fashion.  Nevertheless, the court accepted his response.

On July 10, 2006, United States Magistrate Judge Brooke Wells issued a notice of an initial pre-trial (IPTC) conference to be held on October 11, 2006.  The court reminded the parties to prepare and submit an attorneys' planning meeting report and proposed scheduling order at least thirty days before the IPTC.  A reminder was sent to the parties on September 26, 2006.  The next day, Mr. Raiser filed a meritless motion to recuse Judge Wells, which the court denied on October 18, 2006.[4]  Because of the motion to recuse Judge Wells, the IPTC was rescheduled for December 13, 2006.

The November 29, 2006 "Notice Reminder" for the December 13 IPTC stated in capital letters: "PLEASE NOTE: ALL PARTIES MUST APPEAR – NO TELEPHONIC APPEARANCES WILL BE PERMITTED."  (Dkt # 114.)  Mr. Raiser, who lives in California,[5] received this particular notice on December 5, 2006.  (See Pl.'s Response to OSC at 16.)  He also received notice when counsel for BYU sent him a courtesy e-mail on December 2, 2006, telling him that no telephonic appearances would be allowed at the IPTC.[6]  (See Aff. of David Kono ¶ 2.)  Nevertheless, he filed a pleading titled "Notice Regarding Phone Appearance" (signed December 10, 2006) contending that he was told, over the phone, by a member of Judge Wells'

---

[4]On October 10, 2006, Mr. Raiser filed a motion to extend discovery because he claimed that BYU had illegally obtained an arrest warrant, which prevented him from coming to Utah to attend or take depositions.  That motion was denied as moot by Judge Wells because no scheduling order was yet in place.  (See Nov. 28, 2006 Order (Dkt # 113).)

[5]Mr. Raiser claims he is practically penniless and homeless, or at least an indigent party.

[6]There is no question that Mr. Raiser received the e-mail, because he responded to it on December 3, 2006.  (See Kono Aff. ¶ 3.)

staff, that he did not have to appear in person at the IPTC.  Essentially, he ignored the clear

mandate of the November 29, 2007 notice and relied on a purported representation over the

telephone that, according to a subsequent docket text order by Judge Wells (Dkt # 117), did not

give him permission to appear by telephone.  Even assuming a member of Judge Wells' staff told

Mr. Raiser he did not have to appear in person, that informal statement does not override the

clear mandate entered onto the docket and sent to the parties.

On the same day he filed his Notice Regarding Phone Appearance, he filed a motion to

continue the IPTC, contending that he could not (and would not) attend in person because BYU

had illegally obtained an arrest warrant for him, which would be executed if he showed up for the

court hearing.  As noted below, that arrest warrant was no longer in effect at the time Mr. Raiser

was relying on it as an excuse to avoid appearing in Utah, and Mr. Raiser knew that (or should

have known that)[7] when he filed his motion to continue, representing that the arrest warrant was

in effect.

In response to Mr. Raiser's statement that he did not plan to appear in person, Judge

Wells issued a Docket Text Order on December 12, 2006, denying his motion to continue and

stating that Mr. Raiser's belief about permission to appear telephonically was incorrect:

> Plaintiff was not given permission to appear by phone before the magistrate and is
> ordered to appear in person as set forth in the Notice Reminder [114].  Failure to
> appear will result in an order to show cause concerning whether or not this case

---

[7]Counsel for BYU told Mr. Raiser that the warrant was no longer in effect, and had not been in effect since August 2005.  (Kono Aff. ¶¶ 6, 9, 11.)  Either Mr. Raiser did not believe Mr. Kono (but he could have contacted the state court to receive a definitive answer about the warrant, as Mr. Kono suggested, to confirm Mr. Kono's representation), or he refused to acknowledge the fact and instead asserted in court papers that the opposite was true (with nothing more than speculation to support his position).

4

should be dismissed for failure to prosecute and for failure to abide by court orders.

(Dkt # 117 (emphasis added).)  Because Mr. Raiser is not signed up to receive electronic notice of court rulings and other notices (he has given the court a "general delivery" address in Canoga Park, California), it is highly unlikely that he received Judge Wells' December 12, 2006 Docket Text Order before the December 13, 2006 IPTC.  But he likely received some notice of the potential consequences of not appearing when, on the morning of the hearing date, counsel for BYU sent him an e-mail containing Judge Wells' ruling denying Mr. Raiser's motion to continue.  (See Kono Aff. ¶ 9.)

The next day, Judge Wells held the IPTC, and Mr. Raiser did not appear.  There is no evidence that he even attempted to call in.  And, to date, no scheduling order is in place.[8]

In January 2007, BYU filed its motion for an order to show cause and for a monetary sanction (BYU says it has spent more than $10,000 defending against Mr. Raiser's claims).

In his two-page opposition, Mr. Raiser stated in conclusory fashion that BYU offered "little in the way of factual support for [its] motion."  (Pl.'s Response to Mot. for OSC (Dkt # 127) at 1.)  He said much of the delay was "attributable to this court and not [him]" because the court had not ruled on his June 2005 motion for a Rule 16 scheduling conference.[9]  (Id.)  He

_____

[8]Mr. Raiser proposed that discovery end in September 2009.  (See Attorneys' Planning Meeting Report (Dkt # 110) at 3.)  He said, "Regarding the discovery dates and . . . all dates contingent upon discovery, Plaintiff notes that BYU has obtained an arrest warrant for Plaintiff if he enters Utah.  This means that Plaintiff can conduct little if any discovery and the dates selected reflect the fact that the arrest warrant must first be lifted prior to the case being able to proceed."  (Id.)

[9]Mr. Raiser and BYU waited passively while the motion sat on the docket for eleven months.  No motion to submit for decision was filed.

5

unjustly blamed BYU for causing delay related to the pseudonym issue and appeal that followed.

He chastised BYU for failing to file a motion to dismiss under Rule 12(b)(6).  Still, he admitted

that he received one week's notice of the initial scheduling conference.  Despite the clear

mandate that he must appear in person, he said he "had no reason to believe he could not appear

by phone as he has appeared by phone in this case prior with [J]udge Campbell."  (Id. at 2.)  He

also boldly stated, without any evidence, that "[i]t appears [that] this court on purpose forced

Plaintiff to appear in person after it found out that Plaintiff could not travel to Utah as a result of

the arrest warrant out for him from BYU.  The court needs to explain why it would not allow

phone appearance by Plaintiff."  (Id. at 2.)

        BYU responded that Mr. Raiser knew the warrant was no longer in effect because BYU

personally told him that.  BYU emphasized the e-mail exchange between Mr. Kono and Mr.

Raiser, and pointed to an August 19, 2005 entry in the docket of the state court that issued the

warrant.  That entry, titled "Minutes – Return on Bench Warrant," said "This matter comes

before the Court for a return on a bench warrant.  No one appears.  The matter is stricken."  (Aug.

19, 2005 Minute Entry in Case No. 020403619 CR (Fourth Judicial District Court, Utah County,

State of Utah), attached as Ex. 3 to Pl.'s Response to OSC.)  BYU also contends that Mr. Raiser

falsely claimed that he had received permission from the magistrate judge's chambers to appear

telephonically.

        On March 21, 2007, Judge Wells granted the motion and issued an Order to Show Cause.

Mr. Raiser had twenty-five days to respond.  He now contends that BYU illegally obtained the

warrant and cannot profit from its purported misconduct.  He also contends that the bench

warrant was not rescinded, despite BYU's representations otherwise.  He says the words "The

6

matter is stricken" are ambiguous and do not prove anything.  This somehow excuses his failure to appear.

**ANALYSIS**

The court has been fully apprised of the nature of events that have occurred over the last few years.  Despite the snail's pace of this litigation and other misdeeds by Mr. Raiser, the court finds that, after considering relevant case law, orders of the court, and pleadings, dismissal with prejudice is not warranted at this time.

**<u>Order to Show Cause</u>**

Federal Rule 41(b) permits a court, in its discretion, to dismiss a case "[f]or failure of the plaintiff to prosecute or to comply with [the rules of civil procedure] or any order of court."  Fed. R. Civ. P. 41(b).  "The court may issue at any time an order to show cause why a case should not be dismissed for lack of prosecution.  If good cause is not shown within the time prescribed by the order to show cause, the court may enter an order of dismissal with or without prejudice, as the court deems proper."  DUCivR 41-2.  But dismissing a case with prejudice for failure to prosecute is an extreme remedy.  <u>See, e.g.</u>, <u>Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.</u>, 909 F.2d 1437, 1439 (10th Cir. 1990), <u>cited in</u> <u>Zenati v. Echostar, Inc.</u>, 203 F.3d 837, 2000 WL 43719 at *1 (10th Cir. Jan. 20, 2000) (Table Decision).

The Tenth Circuit requires consideration of five criteria when determining whether to dismiss the complaint under Rule 41(b): "'(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.'"  <u>Mobley v. McCormick</u>,

7

40 F.3d 337, 340 (10th Cir. 1994) (quoting Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992).

Even though Mr. Raiser is a pro se litigant who is held to a less stringent standard than a licensed attorney, he is still required to follow the procedural rules and orders of the court.  Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992).  Moreover, he has the obligation to diligently litigate the claims he chose to file in the District of Utah.  Mr. Raiser set the litigation in motion, and he has the duty to be attentive to the needs of his case, even if he lives in California and has limited resources.  As the plaintiff who has set this litigation in motion, he cannot reasonably expect to conduct his case long-distance from California.

That being said, his failure to appear at the IPTC in December of last year is not, in and of itself, sufficient to allow this court to dismiss his case with prejudice.  See, e.g., Williamson v. Owners Resort & Exch., Case No. 03-4066, 90 Fed. Appx. 342, 2004 WL 370977 at **3 (10th Cir. Mar. 1, 2004) ("This is not a case in which the plaintiff only failed to appear at a single pretrial hearing.  See Meeker v. Rizley, 324 F.2d 269, 271-72 (10th Cir. 1963) (reversing dismissal where plaintiff's only infraction was failure to appear at one pretrial hearing).  Rather, [pro se] plaintiff repeatedly failed to appear at all of the pretrial hearings . . . .").  Also, the court's notice that he risked dismissal for failure to appear was not issued until one day before the IPTC.[10]  Given Mr. Raiser's necessary reliance on the regular mail system to receive notice from the court, he did not receive official notice of that potential sanction before the IPTC was

---

[10]No doubt the warning was issued as soon as the magistrate's office received Mr. Raiser's Notice of Phone Appearance.  But the timing was unfortunately ineffective as official notice.

8

held.[11]

There are, of course, other actions of Mr. Raiser that were noted in BYU's Motion for an Order to Show Cause and in Magistrate Judge Wells' Order to Show Cause. For instance, Mr. Raiser incorrectly (or perhaps falsely and defiantly) relied on what he characterizes as permission to appear telephonically. He appears to be under the impression (correct or not) that the bench warrant is still in effect and that such a situation takes precedent over the court's judgment that he must appear in Utah for an IPTC. Indeed, in a court document, he stated that he had permission, when he in fact did not have such permission. But given the extreme nature of the requested remedy, his misrepresentation is not sufficient to allow dismissal with prejudice.

As for the delay, it cannot be said that the delay in reaching the merits is completely the result of Mr. Raiser's actions. The docket shows that during the first part of the case, the court was dealing with motions to remove, consolidate, dismiss, and extend time to answer, all filed by BYU. And some delay was due to the court's failure to quickly address Mr. Raiser's "Motion for FRCP Rule 16 Conference." (Although it is troubling that both parties—most significantly, Mr. Raiser— sat passively by while nothing happened on the motion for eleven months. No attempt was made to remind the court of the pending motion, perhaps through a notice to submit for decision.)

BYU says that it has spent more than $10,000 defending against Mr. Raiser's claims. Certainly, continuing this matter will cost BYU more money in legal fees and court costs. But it

---

[11]Although he may have received informal notice from BYU through an e-mail on the morning of the IPTC, the court does not consider that proper notice that Mr. Raiser faced the possibility of dismissal for failure to appear.

is the court's intention to minimize the expenses BYU incurs, because the court is going to very closely scrutinize and control the scope of this litigation from now on.  The court cannot say that BYU's litigation position has been prejudiced thus far, and as for the incurrence of costs, that is unfortunately a fact in modern day litigation.  Besides, some of those costs were no doubt incurred by BYU when it filed its own motions.

As for the amount of interference with the judicial process, Mr. Raiser has indeed created some and is unapologetic in his accusations of the court and the court's purported motives in acting.  But the court will survive, and so will the process.

As for Mr. Raiser's culpability, part of the delay and tangential motions arise from Mr. Raiser's unfamiliarity with the litigation process.  Given his pro se status, the court is willing to tolerate that to some extent.  But, as noted above, Mr. Raiser is on thin ice, and does not have much leeway left.

To rectify any notice problems, this order serves as notice that Mr. Raiser is very close to getting his case dismissed with prejudice for failure to prosecute and failure to follow court orders and rules.

For the moment, a lesser sanction is appropriate.  That is, the court imposes certain deadlines and requirements that must be followed.  Those requirements are listed below, and Mr. Raiser is not allowed to file anything that falls outside the scope of the litigation as set forth below.

**BYU's Motions for Sanctions**

On March 21, 2007, United States Magistrate Judge Brooke Wells took BYU's Motion

for Sanctions under advisement.  Consideration of that motion has since transferred to the district

court judge for review.  Having reviewed BYU's request, the court finds that the situation does

not justify an order requiring indigent pro se plaintiff Mr. Raiser to pay BYU $10,000 in fees and

costs.  Accordingly, the court DENIES the motion.

**ORDER**

For the reasons set forth above, the court declines to dismiss the case with prejudice.

Also, BYU's Motion for Sanctions (Dkt # 122) is DENIED.  BYU shall bear its own costs and

fees, and Mr. Raiser shall bear his own costs and fees.

But the court imposes the following restrictions and obligations on the parties, and

especially on Mr. Raiser:

1.      The court will hold an Initial Pre-Trial Conference on Friday, June 1, 2007, at

2:30 p.m. before Judge Tena Campbell.  The Attorneys Planning Meeting Report that was filed

with the court on October 10, 2006 (Dkt # 110) will be discussed and a schedule will be entered.

The parties are not to file any amended proposed scheduling order.  If any amended proposed

scheduling order is filed, it will not be docketed.  During the IPTC, the court will set an

expedited schedule, with consideration given to the existing planning meeting report.  Mr. Raiser

may appear by telephone for that conference only.  But Mr. Raiser is required to appear in person

for all other court hearings unless the court grants permission to appear by telephone.  Such

permission must be in a written court order.  Mr. Raiser is not allowed to file requests to appear

11

by telephone.  If the court finds that it would be the most equitable and efficient use of time to

allow Mr. Raiser to call in, it will inform him of that.

2.      Mr. Raiser is ordered to appear in person in Utah for each and every deposition

scheduled in this case (whether noticed by Mr. Raiser or by BYU).  No telephonic depositions

will be allowed.  FAILURE TO APPEAR IN PERSON FOR ANY DEPOSITION IS GROUND

FOR DISMISSAL OF THE CASE WITH PREJUDICE WITHOUT FURTHER NOTICE.

3.      FAILURE TO APPEAR IN PERSON FOR ANY COURT HEARING (absent

permission as set forth above in paragraph one) IS GROUND FOR DISMISSAL OF THE CASE

WITH PREJUDICE WITHOUT FURTHER NOTICE.

4.      The court discourages any motion for sanctions at this time.  But if a party

nevertheless files such a motion, the court orders that no response shall be filed until the court

advises the parties whether a response is necessary.  This includes Mr. Raiser's most recent

"Motion for Sanctions Against BYU For Disclosure of Unlawfully Obtained Information In

These Proceedings [and] Motion for Limited Related Collateral Discovery"(Dkt # 142.).

5.      Similarly, motions on collateral or ancillary matters (that is, matters not pertaining

to the merits of the case or discovery on issues relevant to the claims in the Second Amended

Complaint[12]) do not require a response unless and until the court advises the parties that a

response is necessary.

6.      No motions to reconsider may be filed.  If the party is not satisfied with the

court's ruling, the issue may be appealed to the Tenth Circuit Court of Appeals when allowed by

---

[12]Discovery on factual matters not alleged in the Second Amended Complaint are off
limits.

the Federal Rules of Civil Procedure and Federal Rules of Appellate Procedure.

SO ORDERED this 23rd day of April, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge